J-A26001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.P.Y., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| S.E.Y., | |
| Appellant | No. 773 MDA 2014 |

Appeal from the Order entered April 14, 2014,
in the Court of Common Pleas of York County,
Civil Division, at No(s): 2008-FC-000619-Y03

BEFORE:  BOWES, MUNDY, and JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                **FILED DECEMBER 08, 2014**

S.E.Y. ("Mother") appeals from the custody order denying her request to relocate with the parties' son, A.Y., from Dover, Pennsylvania, to Millersville, Maryland, and setting forth a custody award.  We affirm.

We summarize the relevant factual and procedural history as follows. A.Y. was born in March of 2003 during the marriage of Mother and R.P.Y. ("Father").  Mother and Father separated in 2006, and they divorced in 2008.  By stipulated order dated April 9, 2008, the parties agreed that they would share legal and physical custody, with Father having physical custody primarily overnight, and Mother having custody during the day when Father is at work, *inter alia*.  Further, the parties agreed that A.Y. would attend the Dover Area School District, wherein Mother resided.

A.Y. has attended school in the Dover Area School District since kindergarten. At all times relevant hereto, Mother has lived in Dover, York County. Father has lived in Lewisberry, York County, which is located in the West Shore Area School District. The driving distance between the parties' homes is approximately 30 minutes. N.T., 3/21/14, at 45.

On October 4, 2013, Mother provided Father with notice of her proposed relocation with A.Y. to Millersville, Maryland. On October 30, 2013, Father filed a counter-affidavit wherein he objected to the proposed relocation and to modification of the custody order. On November 7, 2013, Mother filed a petition for modification of the custody order and requested a hearing on relocation. In her petition, Mother alleges that, since the stipulated custody order, she has exercised primary physical custody and Father has exercised partial custody. Further, Mother assumes that the proposed relocation would improve the quality of life for her and A.Y. Mother claims that her fiancé, L.G., would be closer to his place of employment by relocating to Millersville, Maryland. Mother announces that she is expecting a child with her fiancé, and that they plan to live as a family unit in the Millersville, Maryland area. Mother alleges that she and A.Y. would be relocating to a bigger home. Finally, Mother purports that A.Y. would be able to attend a school district with a better rating than the Dover Area School District.

Following a custody conciliation conference, by interim order dated January 24, 2014, the court granted the parties shared physical custody on a two-week basis. During week one, Father was granted custody from Saturday at 6:30 p.m. until Wednesday at 8:30 a.m., and Mother from Wednesday at 8:30 a.m. until Sunday at 5:00 p.m. During week two, Father was granted custody from Sunday at 5:00 p.m. until Wednesday at 8:30 a.m., and Mother from Wednesday at 8:30 a.m. until Saturday at 6:30 p.m.

On March 10, 2014, the trial court interviewed A.Y. *in camera*, at which time he was nearly eleven years old and in the fifth grade. The court held an evidentiary hearing on Mother's petition on March 21, 2014, and March 28, 2014, during which the following witnesses testified: Mother; L.G., Mother's fiancé; M.S., Mother's neighbor; K.B., Mother's sister; K.L., Mother's friend; Father; K.Y., Father's wife; and T.L.G., the mother of L.G., Mother's fiancé.

By order dated April 11, 2014, and entered on April 14, 2014, the trial court denied Mother's request for relocation, granted the parties shared legal custody, and granted the parties physical custody as follows. If Mother relocates to Maryland or to another location more than 30 minutes from Dover, Pennsylvania, the court granted Father primary physical custody and Mother partial custody three weekends per month during the school year. During the summer, the court granted Mother partial custody from Tuesday

evening until Sunday evening in weeks when Father works on Sunday, and in weeks when Father does not work on Sunday, the court granted Mother partial custody from Tuesday evening until Saturday evening. If Mother continues to reside in the Dover Area School District or resides within 30 minutes of Dover, Pennsylvania, the court granted the parties shared physical custody as described in the interim order dated January 24, 2014, set forth above. In addition, the court granted the parties one uninterrupted nine-day period of partial custody during the summer, and the court set forth a holiday custody schedule. Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother presents the following issues for our review:

I.   Whether the trial court committed an error of law in granting the parties shared physical custody if Mother stays within thirty (30) [minutes] of Dover, Pennsylvania, despite finding that five of the sixteen factors outlined in 23 Pa.C.S.A. § 5328 favor Mother having primary physical custody and all other factors were neutral[?]

II.  Whether the trial [c]ourt erred in denying [Mother]'s Petition for Relocation and Granting [Father] Primary Custody if [Mother] moves further than thirty (30) [minutes] from Dover, Pennsylvania Based Upon the Considerations Listed Below:

     A.   Whether the trial court committed an abuse of discretion in failing to give proper weight to the fact that Father's work schedule inhibits his ability to care for [A.Y.] five - six days of the week, when granting Father primary physical custody if Mother relocates[?]

B.  Whether the trial court committed an abuse of discretion in failing to give proper weight to the negative impact on [A.Y.]'s emotional, physical and educational development by granting Father primary custody if Mother relocates?

C.  Whether the trial court committed an abuse of discretion in not giving proper weight to [A.Y.]'s preference?

D.  Whether the trial court committed an abuse of discretion in determining that [A.Y.]'s quality of life will be greater served by Father having primary custody if Mother relocates, despite the possible implications for Father's financial circumstances and his family home if Father moves to [A.Y.]'s current school district?

E.  Whether the trial court committed an abuse of discretion in failing to consider Father's financial motivation for opposing Mother's relocation?

Mother's brief at 18-19.

The scope and standard of review in custody matters is well-established:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

> ***R.M.G., Jr. v. F.M.G.***, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting ***Bovard v. Baker***, 2001 PA Super 126, 775 A.2d 835, 838 (Pa.Super. 2001)). Moreover,

>> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

>> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

> ***R.M.G., Jr., supra*** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. ***Ketterer v. Seifert***, 2006 PA Super 144, 902 A.2d 533, 539 (Pa.Super. 2006).

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa.Super. 2014).

The primary concern in any custody case is the best interest of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa.Super. 2006) (*citing* ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa.Super. 2004)).

Because the hearing in this matter was held in March of 2014, the Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321-5340, is applicable. ***See*** ***C.R.F. v. S.E.F.***, 45 A.3d 441, 445 (Pa.Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of

the Act, *i.e.*, January 24, 2011, the provisions of the Act apply). Section 5328(a) of the Act provides an enumerated list of factors a trial court must consider in determining the best interest of a child when awarding any form of custody:

§ 5328. Factors to consider when awarding custody.

(a) *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence

where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a). Separately, § 5337(h) enumerates ten factors a court must consider in determining whether to grant a proposed relocation:

(h) *Relocation factors.*--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

This Court has stated, in relevant part,

When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant Section 5328(a) factors. *E.D. v. M.P., 33* A.3d 73, 80 (Pa.Super. 2011). "**All** of the factors listed in

section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. ***E.D.***, ***supra*** at 81. The record must be clear on appeal that the trial court considered all the factors. ***Id.***

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.,*** 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). Section 5323(d) applies to cases involving custody and relocation. ***A.M.S. v. M.R.C.,*** 70 A.3d 830, 835 (Pa.Super. 2013).

***A.V.***, 87 A.3d at 822-823. In this case, the trial court set forth a detailed and comprehensive analysis of each custody factor of § 5328(a) and each relocation factor of § 5337(h) in its opinion accompanying the subject order. ***See*** Trial Court Opinion, 4/14/14, at 9-22.

In her first issue, Mother argues that the court committed an error of law by not granting her primary physical custody if she continues to reside in the Dover Area School District or within 30 minutes of Dover, Pennsylvania. Specifically, Mother avers the court's decision is unreasonable when it found that § 5328(a)(3), (4), (7), (10), and (12) weighed in her favor and that the other custody factors were neutral between the parties. In addition, Mother states "[t]here are at least two additional [custody] factors under which [she] should have prevailed . . . resulting in seven factors weighing [in] favor of Mother having primary physical custody. . . ." Mother's brief at 27.

-10-

The relevant testimonial evidence with respect to the custody factors is as follows. Mother lives with L.G., her fiancé, and their newborn son, D.G., in Dover, York County. N.T., 3/21/14, at 6. Mother testified that, in November of 2013, she became a stay-at-home mother by quitting her job as an administrative assistant and marketing manager for TM Systems. *Id*. at 7, 82-83. Mother testified that, if she decides to return to the work force, she will work for L.G.'s company located in Millersville, Maryland, in a position that will offer a flexible schedule so that she can be available for A.Y. and D.G. *Id*. at 69. L.G. testified that, if Mother decides to return to the work force, his company would offer her a part-time position as office administrator for approximately $31,000, and the position "would be very flexible." *Id*. at 126.

Father lives in Lewisberry, York County, with his wife, K.Y. ("Stepmother"), and their daughter, O.Y., who is age four. *Id*. at 204. Father testified that, for nearly two years, he has been employed by Chesaco RV, a company which sells recreational vehicles. *Id*. at 199, 228. Father is employed as the company's business and financing manager in the Frederick, Maryland office, which is 70 miles from his home, or a driving distance of approximately one hour and twenty minutes. *Id*. at 197, 228-232.

Father testified that his company is open until 7:00 p.m. from mid-March through October ("seasonal months") and until 6:00 p.m. during the

off-season. N.T., 3/28/14, at 74. Father testified he works on Mondays all year from 8:30 a.m. until 4:00 p.m. *Id*. at 73. He is off on Tuesdays every month of the year. Father works from 8:30 a.m. until 7:00 p.m. on Wednesdays and Thursdays during the seasonal months and until 6:00 p.m. during the off-season. *Id*. at 74. On Fridays and Saturdays, Father works from 8:30 a.m. until 5:00 p.m. every month of the year. During the seasonal months, Father works on alternating Sundays from 11:00 a.m. until 4:00 p.m. *Id*. Father does not work on any Sundays during the off-season. N.T., 3/21/14, at 199.

Father testified that Stepmother has been unemployed since July or August of 2013. *Id*. at 219. Stepmother testified she intends to return to the work force, but she is looking for a job with a traditional Monday through Friday schedule, from 9:00 a.m. until 5:00 p.m., so that she can assist with the extracurricular activities of her daughter and A.Y. N.T., 3/28/14, at 12. Stepmother's most recent job was in retail, which did not offer a traditional work schedule. N.T., 3/21/14, at 220, 241.

Significantly, Father testified that A.Y. lived primarily with him after the parties' separation in 2006 and until the stipulated order in 2008. *Id*. at 191. Mother testified that, once A.Y. began school, A.Y. stayed overnight with her more than with Father. *Id*. at 25-26. Stepmother acknowledged that, within the last one and one-half to two years, Mother has exercised more physical custody than Father, including Mondays, Wednesdays,

Thursdays, and Fridays after school. N.T., 3/28/14, at 23. However, Father testified that: he has never missed being present for A.Y.'s first day of school, he has attended most of A.Y.'s parent-teacher conferences, he and Stepmother assist A.Y. with his homework, if needed, and he takes A.Y. to the majority of his dental appointments. N.T., 3/21/14, at 211-214.

Mother implied in her testimony that Father has been consistent with the custody schedule set forth in the January 2014 interim order because Stepmother "has been able to help out." *Id*. at 37. Stepmother testified she has always assisted in the transportation needs of A.Y. during Father's physical custody time, including picking him up from day care, taking him to the bus stop, and/or transporting him to or from Mother's home. N.T., 3/28/14, at 10-11, 18.

Father testified that he and Stepmother have listed their home for sale and they are planning to move to the Dover Area School District so that A.Y. can remain in the same school, where he is doing "very well." N.T., 3/21/14, at 194, 201. Father requested that he and Mother continue to share physical custody if Mother decides not to relocate. *Id*. at 227.

In his *in camera* testimony, A.Y. stated what he liked most about being at Mother's house, as follows:

> [THE COURT]: [W]hat do you like most about being at your mom's house?
>
> [A]: I don't know.
>
> [THE COURT]: Anything jump out?

[A]: I kind of like hanging out with my friends.

N.T., 3/10/14, at 9. A.Y. testified he has three friends who live near his Mother's house, and he also spends time with his two cousins when he is at Mother's house. *Id*. at 6. A.Y. testified he does not have any friends who live near Father's house. *Id*. at 7. With respect to what he likes most about being at Father's house, A.Y. testified, "I guess I like hanging out with my dad and . . . [O.Y.]", his younger half-sister. *Id*. at 9. A.Y. testified that both Mother and Father telephone him to say "good night" when he is at the other parent's house. *Id*. at 10-11.

A.Y. testified with respect to his relationship with Stepmother and L.G., as follows:

> [THE COURT]: How about anything that you dislike about being at your dad's house?
>
> [A]: Kind of feel a little uncomfortable around [Stepmother].
>
> . . . .
>
> [THE COURT]: How about with [L.G.], how do you get along with him?
>
> [A]: I usually get along with him pretty good.
>
> [THE COURT]: And you are more comfortable with being around [L.G.] than you described being a little uncomfortable being around [Stepmother]?
>
> [A]: Yes, a little bit more.
>
> [THE COURT]: Just a little. A little closer with him than with [Stepmother]?
>
> [A]: Yes.

J-A26001-14

*Id*. at 10.

With respect to his custody preference, A.Y. testified he does not like transitioning from Mother's house to Father's house at night during the school week. A.Y. stated, "I kind of don't like the nights dad picks me up. It is kind of like I go to the house and to the next. I don't really like that. I just like to stay at the house that day and stay the night there." *Id*. at 12. A.Y.'s testimony continued,

> [THE COURT]: The time when you make that transition at the end of the day is tough?
>
> [A]: Yes. I don't really like that.
>
> [THE COURT]: [W]hen you transition back, when you go to school, . . . like when you are with your dad, he takes you to school in the morning?
>
> [A]: [Stepmother] usually takes me to school in the morning.
>
> [THE COURT]: So that transition is kind of easier? It is in the morning, you [go to] school, and then you are back with mom at the end of the day?
>
> [A]: Yeah.

*Id*. at 12.[1]

---

[1] We observe that the custody schedule in the January 24, 2014 interim order, which the parties are to continue to follow should Mother decide not to relocate pursuant to the final order, directs that the custody exchange during the school week occur on Wednesday mornings, and that the custody exchange on weekends occur in the evenings. Thus, the shared physical custody schedule conforms to A.Y.'s preference not to transition from one house to the other in the evenings during the school week.

A.Y. testified that he started to go to Father's house more regularly, "I think like when my dad got the papers or whatever, he started to have me a lot more." *Id*. at 31. His testimony continued,

> [THE COURT]: So, when he got the papers relates to the custody trial?
>
> [A]: Yes. Like, he got me a lot more. . . .

*Id*. A.Y. expressed his custody preference to the court as follows: "I want to move with my mom. I want to be with my mom. I still want to see my dad, but just not the crazy schedule. I just want to be with my mom." *Id*. at 42.

Instantly, the trial court weighed the custody factors and concluded that, if Mother continues to reside in the Dover Area School District or within 30 minutes of Dover, Pennsylvania, it is in A.Y.'s best interest that the parties share physical custody. Upon review, we discern no abuse of discretion by the court in this regard as it is "within the court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M. v. M.L.J.*, 63 A.3d 331, 339 (Pa.Super. 2013) (citation omitted); *see also A.V. v. S.T.*, *supra* at 820 (stating that, on issues of credibility and weight of the evidence, we defer to the findings of the trial court).

As Mother asserts on appeal, with respect to § 5328(a)(7), *i.e.*, the well-reasoned preference of the child, the court found that A.Y. "does appear to currently have a closer relationship with Mother than Father which argues in support of this factor favoring Mother." Trial Court Opinion, 4/14/14, at

20. However, the court found "[i]t was apparent from [A.Y.]'s responses . . . that a substantial portion of [A.Y.]'s *in camera* testimony was reflective of information his Mother had provided him. Additionally, at trial, it was confirmed that prior to [A.Y.]'s testimony, Mother had prepared and coached [A.Y.] in preparation for his testimony."[2] *Id*. at 19-20 As such, the court explained that it gave A.Y.'s custody preference "significantly less weight" because of A.Y.'s age and Mother's "apparent efforts to unduly influence his testimony." *Id*.

Likewise, as Mother asserts, the court found that § 5328(a)(3), (4), (10), and (12) weighed in her favor because she is currently a stay-at-home parent and is more available to care for A.Y.'s day-to-day needs. Further, with respect to § 5328(a)(4), *i.e.*, the need for stability and continuity in the child's education, family life and community life, and § 5328(a)(10), *i.e.*, which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, the court reasoned that A.Y. "feels comfortable with his current schedule with Mother." Trial Court Opinion, 4/14/14, at 18. In addition, the court found that Mother

---

[2] Mother testified on direct examination that she showed A.Y. questions prepared by Mother's counsel prior to his *in camera* testimony so that he would know "what to expect and [so that he is] not so nervous." N.T., 3/21/14, at 54. Mother testified A.Y. "did read them[,] and he did have comments for me. . . ." *Id*. Mother testified she reviewed the list of questions with A.Y., but she did not direct A.Y. how to answer the questions. *Id*. at 54, 88.

"is very emotionally supportive and ensures all of [A.Y.]'s needs are met."

***Id***. at 21.

To the extent Mother alleges the court erred by not additionally weighing § 5328(a)(11), *i.e.*, the proximity of the parties, in her favor, we disagree. The court recognized the current distance of approximately 30 minutes between the parties' homes in York County, but found that Father's home is listed for sale, and that he intends to move to Dover, Pennsylvania, to ensure A.Y.'s continued enrollment in the same school district. The record supports the court's findings. Thus, we discern no abuse of discretion by the court in not weighing this factor in favor of either party when fashioning a physical custody order if Mother does not relocate.

Further, insofar as Mother argues that the court should have given weighted consideration to Mother's role as A.Y.'s primary physical caretaker in recent years, we disagree. The parties do not dispute that, for approximately two years prior to the filing of Mother's petition for modification of the existing custody order and request for a relocation hearing, Mother exercised primary physical custody despite the April 9, 2008 stipulated custody order where they agreed to shared physical custody. This Court has explained that,

> The "primary caretaker doctrine," as it has come to be known, had its genesis in ***Commonwealth ex rel. Jordan v. Jordan***, 448 A.2d 1113 (Pa. Super. 1982). In that case, this Court held that in cases involving an award of primary custody "***where two natural parents are both fit***, and the child is of tender years, the trial court must give positive consideration to the parent who

has been the primary caretaker." ***Id***. at 1115 (emphasis added) (citations omitted). . . . Thus, this doctrine was intended to be an additional consideration that would tip the scales in favor of the primary caretaker in a situation where the trial court deemed both parents to be fit to act as a primary custodian.

***M.J.M. v. M.L.J.***, ***supra*** at 337-338 (footnote omitted).

We further explained, however, that § 5328(a) "explicitly provides that all relevant factors shall be considered by the trial court, and the only factors that should be given 'weighted consideration' are factors that 'affect the safety of the child[.]'" ***M.J.M. v. M.L.J.***, ***supra*** at 338; *citing* 23 Pa.C.S. § 5328(a). This Court concluded that, based on the clear language of this statute, "our Legislature has rejected the notion that in analyzing both parents, additional consideration should be given to one because he or she has been the primary caretaker." ***M.J.M. v. M.L.J.***, ***supra*** at 338 (footnote omitted). Thus, we concluded "the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable." ***Id***. at 339.

Nevertheless, this Court recognized that,

the consideration the primary caretaker doctrine sought to address (which parent spent more time providing day-to-day care for a young child) is addressed implicitly in the enumerated factors. ***See, e.g.,*** 23 Pa.C.S. §§ 5328(a)(3) ("The parental duties performed by each party on behalf of the child."); (a)(4) ("The need for stability and continuity in the child's education, family life and community life."). The considerations embraced by the primary caretaker doctrine have been woven into the statutory factors, such that they have become part and parcel of the mandatory inquiry.

*Id*. As such, we stated that "a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the [§] 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under [§] (a)(16)." *Id*.

Although the trial court in this case, in its analysis of § 5328(a)(3) and (4), recognized that Mother takes A.Y. to school, to most doctor appointments, and that she communicates with his teachers, we will not interfere with the court's determinations regarding the weight of this evidence. *See A.V. v. S.T.*, *supra* at 820 (stating that, on issues of credibility and weight of the evidence, we defer to the findings of the trial court); *see also M.J.M. v. M.L.J.*, *supra* at 339 (stating it is "within the court's purview as the finder of fact to determine which factors are most salient and critical in each particular case").

In its opinion pursuant to Pa.R.A.P. 1925(a), the court explained that it based its decision upon consideration of all of the custody factors, as follows:

> Ultimately the Court found that, if Mother remained in York County, it would be in the best interest of [A.Y.] to spend equal time with both Mother and Father. Both parents are fit and willing to provide love and care for the child. Both parents evidenced a continuing desire for active involvement in the child's life. The child recognized both parents as a source of security and love. Additionally, after agreeing to a Stipulated Order for Custody adopted on April 9, 2008, the parents have been able to work together regarding custody . . . for the past six (6) years without court intervention. Said Stipulated Order

-20-

> awarded joint legal custody to Mother and Father and provided
> that custody was to be shared between Mother and Father.

Trial Court Opinion, 6/2/14, at 2. Upon review of the record evidence and the foregoing case law, we discern no abuse of discretion by the trial court in its weighted consideration of the custody factors and in concluding that, if Mother does not relocate, it is in A.Y.'s best interest that the parties share physical custody. Mother's first issue on appeal fails.

In her second issue, Mother claims that the trial court erred by denying her request for relocation and granting Father primary physical custody if she relocates to Millersville, Maryland, or more than 30 minutes from Dover, Pennsylvania. As the party proposing relocation, Mother has the burden of proving that relocation will serve A.Y.'s best interest as set forth under § 5337(h). **See** 23 Pa.C.S. § 5337(i)(1). In addition, "[e]ach party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S. § 5337(i)(2).

Mother testified that she has lived in Dover, Pennsylvania since she was thirteen years old, and in her present home for approximately five years.[3] N.T., 3/21/14, at 6. Mother's two siblings, their spouses, and their children live within five miles of her home in Dover. **Id**. at 62. In addition, Mother testified that her parents, who reside in Idaho, plan to move into her

---

[3] The record reveals that Mother has a monthly mortgage payment in the amount of $758 per month. The record does not indicate how Mother holds title to the property, whether in her name only or otherwise.

home when she relocates to Maryland.[4]   Mother has another sibling, a brother, who plans to return to the York County area.  *Id*. at 72.  Father testified that most of his extended family lives in the York area.  *Id*. at 216.  He testified that his grandparents, A.Y.'s paternal great-grandparents, are particularly close to A.Y.  *Id*. at 217-218.

Mother testified with respect to the reason for her proposed relocation to Millersville, Maryland, as follows:

> My fiancé has a company down there his family owns, and his parents are getting very old and need to retire. . . .  They know [L.G.] needs to be there to take over.  He needs to be closer.
>
> [L.G.] is involved somewhat now, but he needs to be involved on a daily basis.  And when we had started to discuss this, I had . . . started to investigate the area and spend some time down there to see what it was like and then investigating the schools.
>
> . . . I didn't see any negatives at all, just benefits, . . . for [L.G.] but for [A.Y.] and for me as far as being able to be financially taken care of because once [L.G.] takes this over, then his income will increase.
>
> There's no mortgage . . . excellent school system. . . .

*Id*. at 16-17.  Significantly, Mother testified she will relocate with L.G. and her infant son even if the court denies her request with respect to A.Y.  *Id*. at 71.

L.G., Mother's fiancé, testified that his family owns "a family owned business."  *Id*. at 110.  He testified that he is "technically a marketing

---

[4]  Mother testified that she will not sell the property, but that her parents will assume her mortgage payment.  N.T., 3/21/14, at 13, 61, 71.

manager [for the family business], but I do other things for them. And that's where my salary comes from." *Id*. L.G. testified that he intends to take over running the company from his father. *Id*. at 110-111. L.G. testified that his present income is approximately $45,000, and that he will have a higher income when he takes over managing the family business. *Id*. at 125, 131. L.G. testified that the house he will be moving to in Millersville, Maryland is presently owned by his mother, and that he will have no cost associated with living in it. *Id*. at 124. L.G.'s mother, T.L.G., testified that she intends to sign over the title of her home in Millersville, Maryland to L.G. without cost. N.T., 3/28/14, at 59. It is not clear from the record whether T.L.G. will reside in the house with L.G. and Mother or not.

Mother testified that the house in Millersville, Maryland is a driving distance of approximately one and one-half hours from Father's home. N.T., 3/21/14, at 66. Father testified that his employer, located in Frederick, Maryland, is approximately 55 miles from Mother's proposed relocation. *Id*. at 198. Father testified on direct examination,

> Q. And so the fact that your job is in Maryland doesn't make Millersville any more convenient than being in York County, does it?
>
> A. Well, if I were to leave my job and go [to Millersville] and then go home, I would be in the car for approximately two and a half hours barring any traffic.

*Id*. at 198-199.

With respect to § 5337(h)(3), *i.e.*, the feasibility of preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties, the trial court found as follows:

In light of the fact that Father's days off are Tuesday and Sunday, Father has no continuous period available for custody of [A.Y.]. If, as Mother proposes, [A.Y.] is relocated to Maryland and Father is given weekend custody, Father would only have one full day off of work (Sunday) that he would be available to spend time with [A.Y.] during the school year. On Tuesday, Father's other day off, [A.Y.] would spend the day in school. If Father wished to see [A.Y.] after school, although Mother's proposed custody schedule does not provide for such Tuesday visits, Father would need to travel to Mother's proposed residence in Millersville, Maryland, a roundtrip of approximately one hundred and eighty (180) miles from Father's current home in Lewisberry, Pennsylvania, to obtain a few hours of custodial time with [A.Y.]. . . . The Court finds this proposed arrangement unreasonable and not conducive to Father being able to maintain a close and substantive relationship with [A.Y.]. . . . As proposed by Mother should the relocation request be approved by the Court, [A.Y.]'s number of overnight visits with Father during a typical two-week period during the school year would decrease from seven (7) overnights to just two (2) overnights.

Trial Court Opinion, 4/14/14, at 11-12. In its Rule 1925(a) opinion, the court reasoned:

With primary physical custody [during the school year], Father is able to spend quality time with [A.Y.] in the evenings during the week. On the majority of weekends when Father is working during the school year, Mother would have custody of [A.Y.].

During the summer months, which Father testified as being his busiest months at work, Mother has custody of [A.Y.] for the majority of the week when Father is at work. Father has custody of [A.Y.] for shorter custody periods that correlate as closely as possible to Father's work schedule. Overall, the

schedule adopted by the Court optimizes the time [A.Y.] is able to spend with both parents if Mother relocates.

Trial Court Opinion, 6/2/14, at 3.

Mother asserts that the court "erred in determining that it was the proposed relocation that would hinder the relationship, rather than Father's chosen work schedule." Mother's brief at 31. She argues, "it is Father's own choices that hinder his ability to see [A.Y.] regularly, not the proposed relocation." *Id*. at 35. We disagree. Mother's testimony establishes that Father has worked similar hours since she has known him. N.T., 3/21/14, at 24-26. Moreover, it is Mother's burden of proof to establish that the proposed relocation is in A.Y.'s best interest pursuant to § 5337(i)(1). It is not Father's burden to prove that he cannot change his work schedule or his employment to accommodate Mother's proposed relocation.

Further, Mother argues that the court abused its discretion by failing to give proper weight to A.Y.'s preference. We disagree. A.Y. testified *in camera* that Mother first spoke to him approximately two years ago about going to a new school in Maryland. N.T., 3/10/14, at 36. A.Y. testified regarding his preference on Mother relocating to Maryland and Father remaining in Pennsylvania:

> [THE COURT]: Do you have a preference as to what you would rather happen?
>
> [A]: Kind of both sides. But, I am good with my dad [living] here and my mom living there. It might be a little bit better in Maryland.

[THE COURT]: What might be better in Maryland?

[A]: Well, I think it would be better with my kind of week. My dad would pick me up later. I would get there about 7:00 and have like an hour, hour and a half to spend there.

[THE COURT]: So, you are thinking that the schedule between your times with your mom and dad would be better if you are in Maryland?

[A]: Yes, might be a little bit better.

*Id*. at 37-38.

A.Y. testified he wants to move to Maryland with Mother. *Id*. at 30. Upon inquiry by the court regarding what he likes about the idea of moving to Maryland, A.Y. testified, "I am just going to make new friends, I guess. That might be pretty much it, I guess." *Id*. at 40. However, A.Y. also testified he will be sad to leave his friends in Dover. *Id*. at 36. Further, A.Y. testified with respect to his extended maternal and paternal relatives in York County, and that he enjoys seeing his family on both sides. *Id*. at 29.

Upon review, A.Y.'s testimony revealed the influence of Mother on his relocation preference. Further, A.Y.'s testimony demonstrated that he remained conflicted about the benefits of relocating. We discern no error by the court, as discussed above, in placing "significantly less weight" on A.Y.'s preference due to his age and Mother's "apparent efforts to unduly influence his testimony." N.T., 4/14/14, at 20.

Mother alleges that the court "erred in failing to give proper weight to the negative impact on [A.Y.]'s emotional, physical and educational

development by granting Father primary custody if Mother relocates."
Mother's brief at 40. Specifically, Mother asserts that the court erred in its
custody award because A.Y. has a closer relationship with her and L.G. than
with Father and Stepmother.

The court responded in its Rule 1925(a) opinion that A.Y. would be
best served if Mother remained in York County. However, if Mother
relocates, the court found that,

> [A.Y.]'s emotional development would be most advanced by
> remaining in York County because many of [A.Y.]'s extended
> family members live in the area. On the other hand, aside from
> his Mother and half-sibling, no biological family members of
> [A.Y.] were identified at trial as living in Maryland. Additionally,
> [A.Y.] is comfortable and successful in his current school and has
> a network of friends both at school as well as in the community.
> Finally, and importantly, remaining in York County would
> preserve [A.Y.]'s ability to maintain an active relationship with
> his Father.

Trial Court Opinion, 6/2/14, at 4. Again, we discern no basis upon which to
disturb the court's findings. In addition, we reject Mother's further assertion
that "Father's credibility regarding his true intention of relocating to [A.Y.]'s
school district is questionable." Mother's brief at 43. As stated above, it is
well-established that, on issues of credibility and weight of the evidence, we
defer to the findings of the trial court.[5] **_See A.V. v. S.T._**, **_supra_**.

---

[5] In addition, Mother asserts that the court "erred in emphasizing the
presence of extended family members in [A.Y.]'s life as a reason to deny
relocation, when the same level of family involvement will be maintained if
[A.Y.] relocates." Mother's brief at 47. We reject Mother's assertion
because there is ample testimonial evidence to support the court's finding
that Mother's proposed relocation "will clearly deny [A.Y.] the day-to-day

Next, Mother avers that the trial court erred in concluding that § 5337(h)(7), concerning whether the relocation will enhance the general quality of life for A.Y., weighs against the proposed relocation. Specifically, Mother contends that court erred because it "failed to properly consider the negative implications for Father's financial circumstances and his family home," due to his intent to move to the Dover Area School District. Mother's brief at 51. She argues:

> Due to the likelihood that his home will be "upside down" Father testified that, if he must, he will be forced to do a "deed in lieu or short sale" to relocate to [A.Y.]'s school district. . . . [Father] also speculated that he will have to rent, just so he can live in the school district. This will be his only option due to being forced to short sell his home. Finally, this move may force [Stepmother] to return to work, thus rendering her unable to care for [A.Y.] while Father works, as well as their own child, [O.Y.]. [A.Y.] will be forced to care for himself or he will have to be enrolled in childcare, resulting in even more financial burden for Father.

Mother's brief at 52 (citations to reproduced record omitted). Mother's argument is without merit.

In its Rule 1925(a) opinion, the trial court stated, "Father indicated that if he could not sell his home prior to the start of the new school year, he would rent a home in the Dover Area School District until his sold. No testimony was presented as to a negative impact on the child's quality of life in this instance." Trial Court Opinion, 6/2/14, at 6. We agree.

---

emotional benefit of regular interactions with extended family members . . . ." Trial Court Opinion, 4/14/14, at 10.

Mother merely speculates that Father's house would go to a short sale.[6] In addition, the record does not support Mother's contention that Stepmother may have to return to work due to selling the house and moving to Dover, and, therefore, she would not be able to care for A.Y. while Father is at work. Stepmother testified she intends to return to work, and she is currently looking for a job, as described above, with traditional hours so that she will be available to care for A.Y. and her daughter. N.T., 3/28/14, at 12. Further, Stepmother's testimony that she intends to return to work was unrelated to the sale of their house. In sum, Mother's argument is mere speculation, as the record is devoid of any evidence that the sale of Father's house and his move to Dover will have implications that negatively affect A.Y.

Indeed, we cannot find that the trial court abused its discretion in finding that the proposed relocation will not enhance A.Y.'s quality of life. The court reasoned as follows:

---

[6] Father testified as follows, in part:

Q. Is the house upside down?

A. It probably depends what we get for it.

Q. So you do not expect to get any cash at the time of the sale?

A. We're hoping upon hope to break even.

N.T., 3/21/14, at 202.

Aside from [Mother's] personal opinion, there was no convincing evidence presented at trial to indicate that the school district in Maryland to which [A.Y.] would be enrolled is better than [A.Y.]'s current school district in York County. Certainly, transitioning schools in early adolescence is an emotionally stressful experience for any child. [A.Y.] will be leaving a school and peers with whom he is comfortable and starting over in a completely new environment. Additionally, [A.Y.] will be leaving his many extended family members that live in York County and the surrounding area. Overall, [A.Y.] will be leaving his school, friends, and family behind to move to Maryland where he has no current friends and, most importantly, no maternal or paternal family members other than his [m]other and half-brother.

Trial Court Opinion, 4/14/14, at 14-15.

Finally, Mother argues that the court abused its discretion in failing to consider Father's financial motivation in opposing the proposed relocation, *i.e.*, not wanting to pay child support. In support of her argument, Mother references the 2008 custody action between the parties, and her testimony that Father filed the action in response to Mother filing a petition for child support. *See* N.T., 3/21/14, at 15-16. Father testified he filed the custody action in 2008 because "I felt that I was providing [A.Y.'s] primary care at the time. . . ." *Id*. at 191. Further, Mother maintains that Father's "financial motivations keep him from obtaining a profession that would allow him more time with [A.Y.]. . . . It is Father's same concerns with finances[] that have led him to oppose Mother's request to relocate." Mother's brief at 53.

We reject Mother's arguments based upon our careful review of the testimonial evidence. The court accurately determined that "Father was

motivated by love for [A.Y.] and a strong desire to spend more time with the child as opposed to any financial motivations." Trial Court Opinion, 6/2/14, at 6. As the record sustains that finding, we will not disturb it. *A.V. v. S.T.*, *supra* at 820 (stating that, on issues of credibility and weight of the evidence, we defer to the findings of the trial court).

In this case, the trial court carefully analyzed each relocation factor, and the testimonial evidence supports the court's factual findings. The trial court properly assessed the weighted consideration of each relocation factor. The court's determination that the proposed relocation is contrary to A.Y.'s best interest is explained in its essence as follows:

> Although Mother's proposed relocation may enhance her quality of life from a financial standpoint, the relocation is not prompted by any documented economic hardship suffered by Mother. Without economic hardship, the Court will not advance the financial well-being of Mother and her fiancé to the detriment of the relationship between Father and [A.Y.]. In essence, the Court was faced with the choice of Mother sustaining a long-distance relationship with her fiancé or [A.Y.] maintaining a long-distance relationship with his biological Father. . . . Any benefits [A.Y.] may receive as a result of the relocation are outweighed significantly by the benefits associated with [A.Y.] remaining in Dover.

Trial Court Opinion, 4/14/14, at 16. As the certified record supports the court's rationale, we affirm the custody order that denies Mother's relocation request and outlines a custody arrangement that provides Father primary physical custody of A.Y. if Mother relocates to Maryland, and orders shared physical custody if Mother remains within thirty miles of Dover, Pennsylvania.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/8/2014</u>